*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MONICA VAGHANI SUTARIYA,

Plaintiff-Appellee,

v

YASHESH SUTARIYA,

Defendant-Appellant.

UNPUBLISHED
February 18, 2020

No. 345115
Wayne Circuit Court
LC No. 16-114520-DM

Before: STEPHENS, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right from a judgment of divorce. We affirm in part, vacate in part, and remand.

## I. THE ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant argues that the trial court's findings regarding the children's established custodial environment and the best-interest factors were against the great weight of the evidence, and that the trial court abused its discretion by finding that it was in the children's best interests to grant permanent sole physical custody to plaintiff. We disagree.

This Court reviews " 'factual findings on matters such as the established custodial environment and the best-interest factors' " using the great weight of the evidence standard. *Griffin v Griffin*, 323 Mich App 110, 130; 916 NW2d 292 (2018) (citation omitted). The trial court's factual findings " 'will be affirmed unless the evidence clearly preponderates in the opposite direction.' " *Id.* (citation omitted). The trial court's "discretionary rulings, such as the court's determination on the issue of custody, are reviewed for an abuse of discretion," and questions of law are reviewed for clear legal error. *Id.* (citation omitted). "Clear legal error occurs when the trial court errs in its choice, interpretation, or application of the existing law." *Varran v Granneman*, 312 Mich App 591, 617; 880 NW2d 242 (2015) (quotation marks and citation omitted). Additionally, "[f]indings of fact, such as the trial court's findings on the statutory best-interest factors, are reviewed under the 'great weight of the evidence' standard." *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011).

-1-

Defendant first contends that the trial court's findings regarding the children's established custodial environment were against the great weight of the evidence. Generally, a trial court may only modify previous orders regarding parenting time and custody "for proper cause shown or because of [a] change in circumstances . . . ." *Shade v Wright*, 291 Mich App 17, 22; 805 NW2d 1 (2010) (quotation marks and citation omitted). This Court notes that the judgment of divorce contained the first custody order in this case. Consequently, "the requirement to show proper cause or change of circumstances does not apply to the trial court's initial award of custody. . . ." *Thompson v Thompson*, 261 Mich App 353, 362; 683 NW2d 250 (2004); see also MCL 722.27(1)(c). Decisions regarding child custody and parenting time begin with a determination regarding a child's established custodial environment. *Demski v Petlick*, 309 Mich App 404, 445; 873 NW2d 596 (2015). "[A] trial court is required to determine whether there is an established custodial environment with one or both parents before making *any* custody determination." *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011). An established custodial environment is defined as an environment

> . . . of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. [*Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008).]

If a modification changes the child's established custodial environment, "the moving party must show by clear and convincing evidence that it is in the child's best interest." *Shade*, 291 Mich App at 23. However, "[i]f the proposed change does not change the custodial environment . . . the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id*.

The trial court concluded that an established custodial environment existed solely with plaintiff, and defendant contends that this finding was against the great weight of the evidence. However, the trial court's factual determinations were supported by the record. Plaintiff had temporary sole physical custody of the children following her separation from defendant in 2016, and provided for their day-to-day physical and material needs, including attending parent-teacher conferences, engaging in recreational activities with the children, and caring for the medical needs of the couple's infant triplets, who were born premature. Although defendant visited the children and exercised approximately 60% of his parenting time, he did not provide "security, stability, and permanence" to them. *Berger*, 277 Mich App at 706. Defendant moved out of the marital home when the triplets were approximately five months old. Additionally, the record does not indicate that the couple's oldest daughter, SS, had a close relationship with defendant or that she looked to him for guidance and support. SS was uncomfortable with parenting time because she was exposed to defendant's new girlfriend and her daughter, whom SS disliked.

Moreover, the record indicated that the triplets were not properly cared for when defendant exercised parenting time. Defendant refused to receive medical training in the use of the triplets' oxygen nebulizer, refused to purchase extra nebulizer face masks for each triplet, used plaintiff's minivan to transport the children instead of buying a second set of car seats, and exposed one of the triplets to a dog during parenting time despite knowing that he is allergic to dogs. Overall, the record shows that the children resided primarily with plaintiff, and that they naturally looked to

plaintiff for "guidance, discipline, the necessities of life, and parental comfort." See MCL 722.27(1)(c). Therefore, the trial court's conclusion that an established custodial environment existed only with plaintiff was not clearly against the great weight of the evidence.

Defendant next argues that the trial court's factual findings regarding the best-interest factors outlined in MCL 722.23 were against the great weight of the evidence, and thus, that the trial court abused its discretion by awarding permanent sole physical custody of the children to plaintiff. The trial court found that an established custodial environment existed with plaintiff, and held plaintiff to a preponderance-of-the-evidence standard of proof. As previously stated, if a proposed change in custody "does not change the custodial environment . . . the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Shade*, 291 Mich App at 23. However, the proceedings discussed herein did not entail a change of custody; rather an initial custody determination was made and set forth in the judgment of divorce. Accordingly, there was not a requirement to show proper cause or a change of circumstances. *Thompson*, 261 Mich App at 362. Defendant specifically challenges the trial court's findings with regard to factors (c), (d), (e), (h), (j), and (k).

Defendant's objection to factor (c), which concerns the "capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs," MCL 722.23(c), is unclear. The trial court weighed this factor equally between the parties, but defendant contends that this finding conflicts with the court's decision to weigh defendant's lengthy work hours against him in its ultimate decision regarding custody. However, defendant provides no factual or legal support for his argument, and makes no effort to explain how the alleged finding regarding the amount of hours he worked has any bearing on the trial court's decision to weigh factor (c) equally between the parties. Regardless, the trial court's findings regarding factor (c) were not against the great weight of the evidence. The trial court aptly found that "both parties have the capacity and disposition to provide the children with food, clothing, and other material needs." This was supported by the record, which indicated that plaintiff primarily cared for the children's daily needs and that defendant, a successful businessman, had the means to provide for the children and made an effort to do so. Thus, the trial court's findings were not against the great weight of the evidence.

Factor (d), which concerns "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity," MCL 722.23(d), was weighed in favor of plaintiff, and the trial court opined that plaintiff "always primarily cared for the triplets" and "has always primarily been responsible for [SS]" as well. Defendant contends that this factor should have been weighed equally, or weighed in his favor, because the children grew up in the marital home in Michigan, which defendant intended to maintain, whereas plaintiff wanted to completely remove the children from their stable environment by changing domiciles and moving the children out of state. Defendant's argument appears to conflate the best-interest determination for a change of domicile with the best-interest determination for a change of custody or parenting time. Ultimately, despite the fact that plaintiff was seeking a change of domicile, the trial court's findings were supported by evidence in the record. The record indicated that the children have always lived with plaintiff, and that plaintiff has been the primary caretaker of the children, including SS, throughout their lives. Conversely, defendant did not provide a stable environment for the children, and brought them into a home where SS was exposed to a child she disliked, and

where the triplets were at risk of aggravating their medical issues due to defendant's historical unwillingness to accommodate their needs. Accordingly, the trial court's findings were not against the great weight of the evidence.

Factor (e), MCL 722.23(e), addresses "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." The trial court weighed factor (e) in plaintiff's favor, and found that plaintiff provided more permanence, as a family unit, because she did not introduce a new romantic partner or new children into the family dynamic, as defendant did with his new girlfriend and her daughter. The trial court noted that SS found this upsetting. Defendant argues that, by weighing factor (e) in plaintiff's favor, the trial court made an improper "acceptability" analysis, rather than a "permanence" analysis. In support of his argument, defendant directs this Court to *Fletcher v Fletcher*, 447 Mich 871; 526 NW2d 889 (1994). In *Fletcher*, the Michigan Supreme Court evaluated the trial court's factor (e) findings, in which the trial court stated that it was "satisfied that either parent . . . would offer [an] acceptable custodial home[] . . . ." *Id*. at 884. Our Supreme Court found that it was legal error for the trial court to consider the "acceptability of the custodial home" when evaluating factor (e). *Id*. at 884.

Defendant contends that the trial court assigned undue weight to the fact that he was in a new relationship, and that in doing so, the trial court improperly commented on the acceptability of the home environment he could provide to the children. Various life events may undermine the stability of a child's home. *Ireland v Smith*, 451 Mich 457, 465 n 9; 547 NW2d 686 (1996). Some of these occurrences include "frequent moves to unfamiliar settings, a succession of persons residing in the home, live-in romantic companions for the custodial parent, or other potential disruptions." *Id*. While in some cases a trial court's comments regarding a party's new romantic partner may result in an improper acceptability analysis, this Court must examine each scenario individually, on a case-by-case basis. *Id*. Here, it is clear that the presence of defendant's girlfriend and her daughter in defendant's home made it a less stable environment for SS, who was uncomfortable with her father's new relationship and disliked his girlfriend's daughter. The record suggested that SS tended to see defendant's girlfriend and her daughter as a threat to her relationship with defendant. Although defendant urges this Court to view the trial court's findings as a commentary on defendant's moral fitness, the trial court was clearly more concerned with the emotional impact that defendant's new romantic relationship had on the children, particularly SS. SS had a negative reaction to defendant's girlfriend and her daughter. This rendered defendant's household less stable for the children than plaintiff's household, which has been the children's home and primary source of security for the duration of their lives. Accordingly, the trial court's findings were not against the great weight of the evidence.

Factor (h) regards "[t]he home, school, and community record of the child." MCL 722.23(h). This factor was weighed slightly in favor of plaintiff. The trial court noted that the triplets were too young to have a school or community record, but that plaintiff had been primarily responsible for SS, who was thriving in school. Defendant argues that factor (h) should have been weighed in his favor, or weighed equally, because he paid for tutoring for SS and helped her with her homework. The record supports defendant's assertion that he paid for tutoring and helped SS with her homework "when [plaintiff] wasn't up to it." However, the fact remains that plaintiff was far more involved in the children's home life, education, and community involvement. As the children's primary caregiver, plaintiff was responsible for enrolling SS in school, attending her parent-teacher conferences, and managing her extracurricular and recreational activities in the

-4-

community, along with caring for the triplets and their medical needs. Thus, the trial court's conclusion that factor (e) should weigh slightly in favor of plaintiff was not against the great weight of the evidence.

Factor (j) addresses "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The trial court weighed factor (j) equally between the parties, noting that the parties "have worked well to facilitate a parenting time schedule . . . and are amicable with each other . . . . Their testimony also establish[es] their ability to encourage good relationships with each other." Defendant contends that plaintiff's effort to move the children out of state showed an unwillingness to facilitate a relationship between defendant and the children. The record does not support this conclusion. Plaintiff was questioned regarding her plans to facilitate parenting time in the event that her motion to change domicile was granted. Plaintiff expressed a willingness to allow defendant to keep the children for a longer period of time in the summer to compensate for the fact that he would be able to see them less on a weekly basis, particularly during the school year. Plaintiff also agreed to alternate parenting time on holidays with defendant. No evidence was proffered that would indicate that plaintiff wanted to move out of state in order to prevent defendant from seeing the children. Therefore, defendant's complaint is unfounded, and the trial court's findings were not against the great weight of the evidence.

Finally, factor (k) concerns "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). Factor (k) was weighed slightly in favor of plaintiff, who was shoved into a headboard by defendant while attempting to pull him off of SS. At that time, defendant pinned SS down in an attempt to remove a pair of earrings from her ears, and plaintiff was struck for interfering. Defendant asserts that an isolated incident of assault, which was not witnessed by the children, was not sufficient to support the trial court's findings with regard to factor (k). However, defendant concedes that he did not refute plaintiff's testimony regarding the incident at trial and, for all intents and purposes, admits to this Court that he assaulted plaintiff on a single occasion. Further, defendant attempts to detract from the severity of the incident by informing this Court that the incident did not occur in front of the children. However, it is unclear how the incident could have gone unnoticed by SS, who was allegedly being pinned down by defendant when he shoved plaintiff. Moreover, the plain text of factor (k) specifically states that any act of domestic violence should be taken into account, "regardless of whether the violence was . . . witnessed by the child." MCL 722.23(k). The undisputed evidence showed that defendant lashed out violently toward SS and plaintiff, and thus, the trial court's findings regarding factor (k) were not against the great weight of the evidence. Accordingly, since the trial court properly weighed the best-interest factors applicable herein, it did not abuse its discretion by finding that it was in the children's best interests to grant sole physical custody to plaintiff.

## II. CHANGE OF DOMICILE

Defendant argues that the trial court abused its discretion by granting plaintiff's request for a change of domicile because the trial court's findings were against the great weight of the evidence. We disagree.

In child custody actions, this Court reviews a trial court's factual findings using the great weight of the evidence standard. *Griffin*, 323 Mich App at 130. This Court will affirm the trial

court's factual findings " 'unless the evidence clearly preponderates in the opposite direction.' " *Id*. (citation omitted). "[T]his Court reviews for an abuse of discretion a trial court's decision on whether to grant a motion for change of legal residence . . . ." *Yachcik v Yachcik*, 319 Mich App 24, 31; 900 NW2d 113 (2017). In the context of child custody disputes, "an abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion of bias." *Id*., quoting *Fletcher*, 447 Mich at 879-880.

The trial court made its findings pursuant to MCL 722.31(4). See MCL 722.31(4). These factors, also known as the *D'Onofrio*[1] factors, are as follows:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child. [*Rains v Rains*, 301 Mich App 313, 326; 836 NW2d 709 (2013), quoting MCL 722.31(4).]

Defendant contends that the trial court's findings concerning MCL 722.31(4) improperly focused on the impact that moving out of state would have on plaintiff, and argues that the trial court should have focused only on whether the move would detrimentally impact the children. "[A] parent of a child whose custody is governed by court order" is prohibited from changing "a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued." *Rains*, 301 Mich App at 326, quoting MCL 722.31(1). When determining whether a motion for a change of domicile should be granted, the trial court is required to determine whether the party moving for the change of domicile has "established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) . . . support a motion for a change of domicile." *Id*. at 325.

---

[1] *D'Onofrio v D'Onofrio*, 144 NJ Super 200, 206-207; 365 A2d 27 (1976).

With regard to factor (a), the trial court found that moving to a location closer to plaintiff's parents could improve plaintiff's and the children's quality of life because plaintiff would have better employment opportunities and could get free childcare assistance from her family. This Court has established that "the relocating parent's increased earning potential may improve a child's quality of life . . . ." *Rittershaus v Rittershaus*, 273 Mich App 462, 466; 730 NW2d 262 (2007). The findings were also properly supported by the record. Plaintiff had three job offers near her parents' home, and planned to stay with her parents once she moved. Plaintiff also believed that staying with her family would make her cost of living more affordable than it would be if she purchased or rented a home on her own in Michigan.

Defendant makes several arguments under factor (a) to support the notion that the trial court focused too much on whether the move would improve plaintiff's quality of life. Defendant contends that the trial court did not take into account that the move could be selfishly motivated by plaintiff's need to have a social life and live closer to her parents, who could no longer travel to Michigan to see the children. Defendant directs this Court to portions of plaintiff's testimony, which state as follows:

> *Q.* And how do you think . . . [being] a single mom . . . would effect [sic] your career if you were here?
>
> *A.* I wouldn't have any social life. It would all be about the kids. It would extremely hard [sic]. I mean even with a nanny trying to make food for all of us and then feeding them . . . . They're throwing stuff all over the place. And when it's time to take a bath, they're already all over the place as it is. It's extremely hectic.
>
> * * *
>
> *Q.* Do you think given the distance . . . that [your parents are] going to be able to continue to visit as often with you and the children that they have been?
>
> *A.* No.
>
> *Q.* Why?
>
> *A.* The distance is too far and my dad's lived on his own for about two years. So I mean, they have lives.

When read in context, the testimony merely reveals that plaintiff wanted to improve her quality of life by seeking a family support system that could make raising four children easier. Defendant cites to no caselaw suggesting that the trial court cannot take into account the fact that a change of domicile may make raising children easier for the parent. To that end, this Court observes that factor (a) allows the trial court to take into account whether a change of domicile would improve the quality of life of *both* parent and child. MCL 722.31(4)(a).

Defendant also contends that the move would not improve SS's quality of life because she lived most of her life in Michigan and would be removed from her home environment. Defendant argued that staying in Michigan, would be better for SS than a change of domicile because it would

allow her to remain close to paternal cousins her age that lived in the area. At trial, defendant testified that his brother's children were friends with SS and the triplets, and that there was "kind of a big extended family" available to support the children in Michigan. However, plaintiff testified that the children would have a better social support system in her parents' neighborhood. SS had friends who lived in or near plaintiff's parents' neighborhood, and SS was familiar with the neighborhood. Plaintiff further testified that defendant was not close with most of his family members in Michigan, and none of them had children for SS and the triplets to befriend. It is apparent that the trial court found plaintiff's testimony more credible than defendant's testimony. This Court "defer[s] to the trial court's credibility determinations . . . ." *Kessler*, 295 Mich App at 64. Accordingly, the trial court properly found that factor (a) weighed in favor of a change of domicile.

With regard to factor (b), the trial court found that defendant generally complied with his parenting time, and that no evidence suggested that plaintiff's desire to move was intended to block defendant from exercising parenting time in the future. Defendant contends that this is untrue, and argues that the history of the litigation show that plaintiff's attempts to move out of state were not founded on the children's best interests or strengthening the parent-child relationship between defendant and the children. Defendant cites to a portion of the record where plaintiff states that the children could adapt to lengthy drives between Illinois and Michigan, "just like [SS] got adapted to [defendant]'s girlfriend." Defendant does not explain how this statement shows that plaintiff's attempt to move out of state was motivated by a desire to keep him from exercising parenting time. Indeed, defendant ultimately cites no concrete factual support for the assertion that plaintiff willfully attempted to prevent defendant from exercising parenting time by moving out of state. Contrary to defendant's assertion that plaintiff is attempting to keep him away from the children by moving out of state, the record shows that plaintiff explicitly expressed a willingness to give defendant ample parenting time in the summer, and agreed to alternate parenting time with the children on holidays. Therefore, defendant's claim must fail for lack of factual support. See *Forest Hills Coop v Ann Arbor*, 305 Mich App 572, 613 n 5; 854 NW2d 172 (2014) (stating that a defendant "may not leave it to this Court to search for a factual basis to sustain or reject [his] position.").

With regard to factor (c), the trial court was satisfied that summer parenting time would "allow [defendant] to preserve his relationship with the children." MCL 722.31(4)(c). Defendant challenges this assertion, arguing that moving the children out of state reduces the amount of parenting time that defendant will have with the children, which in turn will damage the parent-child relationship he has with the children. When analyzing factor (c), "one must start with the premise that implicit in this factor is an acknowledgment that weekly visitation is not possible when parents are separated by state borders." *Brown v Loveman*, 260 Mich App 576, 603; 680 NW2d 432 (2004) (quotation omitted). The parenting time schedule included in the judgment of divorce granted defendant two weekends of parenting time per month and six consecutive weeks of parenting time in the summer. During defendant's summer parenting time, plaintiff would be entitled to two weekends of parenting time. The new parenting time schedule "need not be equal with the current visitation plan" between the parties. *McKimmy v Melling*, 291 Mich App 577, 584; 805 NW2d 615 (2011). Instead, the parenting time schedule must only "provide[] 'a realistic opportunity to preserve and foster the parental relationship previously enjoyed' by the nonrelocating parent." *Id.* (citation omitted). The trial court concluded that the parenting time schedule offered defendant sufficient time to preserve and foster his parental relationship with the

children during the summer and at least two weekends per month. Accordingly, the trial court's factual findings regarding factor (c) were not against the great weight of the evidence.

Next, the trial court found no evidence that the move was "motivated by child support obligation issues," as described in MCL 722.31(4)(d). Defendant raised no objection to this finding. Finally, the trial court noted that there was a brief history of domestic violence between the parties, which was accounted for pursuant to MCL 722.31(4)(e). Defendant asserts that the incident of domestic violence pushed plaintiff to file a previous complaint for divorce before the triplets were born. The record does not reveal plaintiff's reasoning for filing the first complaint for divorce. However, even if defendant's factual assertions regarding the domestic violence are correct, defendant makes no effort to explain their relevance to the trial court's findings regarding MCL 722.31(4)(e), other than to suggest that the assault was less serious because the triplets did not witness it. Generally, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) (quotation marks and citation omitted). An "appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008) (quotation marks and citation omitted). Thus, defendant's complaint pertaining to MCL 722.31(4)(e) has been abandoned. The trial court's findings pertaining to the *D'Onofrio* factors were not against the great weight of the evidence, and defendant has failed to show that the trial court abused its discretion by granting plaintiff's motion for a change of domicile. Accordingly, defendant's claim lacks merit.

## III. MARITAL ASSETS – SATURN ELECTRONICS

Defendant argues that the record does not support a ruling dividing his interest in Saturn Electronics ("SE") stocks, which are held in trust, and that his interest in SE was not properly valued at $3 million. Defendant also contends that the trial court abused its discretion by granting plaintiff a $1 million share of defendant's interest in SE because the trust containing the stocks was separate property not subject to division, and further abused its discretion by ordering defendant to pay the $1 million share to plaintiff in a lump sum. We reject defendant's arguments on valuation of this asset, but remand for further proceedings regarding the distribution.

No special action was necessary to preserve these issues for appeal. MCR 2.517(A)(7); *Reed v Reed*, 265 Mich App 131, 150; 693 NW2d 825 (2005). With regard to the issues of whether defendant's interest in SE was properly valued at $3 million, and whether his interest was properly included in the marital estate, which encompasses a decision "involving division of marital property," this Court first reviews the trial court's factual findings. *Butler v Simmons-Butler*, 308 Mich App 195, 207; 863 NW2d 677 (2014). "Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous." *Id*. at 207-208. A finding of fact is considered to be "clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made." *Id*. at 208. If the findings of fact are not clearly erroneous, "this Court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Id*. The trial court's dispositional rulings are discretionary, and "will be affirmed unless this Court is left with a firm conviction that the division was inequitable." *Id*.

Defendant directs this Court to a number of cases stating that a party seeking the division of property included in a marital estate bears the burden of providing a *valuation* of the property. See, e.g., *Magee v Magee*, 218 Mich App 158; 553 NW2d 363 (1996) (holding that the trial court erred by awarding the entirety of a pension to the plaintiff where proofs regarding the value of the pension were not produced by either party). We concur that plaintiff had the burden of establishing the value of any asset, marital or separate, from which she sought a distribution. The parties' joint expert witness proffered evidence that defendant's interest in SE was valued at $3 million, while defendant's expert valued defendant's interest in SE at $2.2 million. The trial court's ultimate determination relied on the credibility of the expert witnesses, and this Court "accord[s] special deference to a trial court's factual findings that were based on witness credibility." *Woodington v Shokoohi*, 288 Mich App 352, 358; 792 NW2d 63 (2010). If the "trial court's valuation of a marital asset is within the range established by the proofs, no clear error is present." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994). The trial court valued defendant's interest in SE at $3 million, indicating that it accepted the joint expert's testimony regarding the value of defendant's interest. Thus, the trial court's valuation was "within the range established by the proofs," and it did not commit clear error in valuing defendant's interest in SE at $3 million. *Id*. The court credited that value and we are loathe to disturb that evidence-based finding.

The court also accepted the defendant's assertion that these stocks were not a marital asset. That ruling was based upon record evidence regarding the trust origins and the defendant's interest in the trust contrary to defendant's assertion that the record does not contain information regarding defendant's rights as a trust beneficiary. We agree and also accept the defendant's recitation of authority that under most circumstances, one marital partner's separate property is not distributed to the other marital partner. We also agree the plaintiff bears the burden of proving her equitable claim to separate property of the defendant. However, we reject the assertion that once the court determined that the trust was not a part of the martial estate that it could under no circumstances be distributed in whole or in part to the plaintiff. In support of his argument that the separate property cannot be distributed to the plaintiff, defendant cites to *Gilkey v Gilkey*, 162 Mich 664; 127 NW 715 (1910), wherein the Michigan Supreme Court held that the plaintiff could not enforce a lien against the corpus of a trust for a debt of beneficiary to whom no distribution had been made. Defendant also cites to *Kasper v Metro Life Ins*, 412 Mich 232; 313 NW2d 904 (1981), which stands for the proposition that, "although the divorce court could not make a third party the beneficiary of a life insurance policy, it could ratify the parties' agreement to that effect." *Estes v Titus*, 481 Mich 573, 589; 751 NW2d 493 (2008). Encumbrances favoring third-parties are not at issue in this case and thus, *Kasper* is not dispositive.

There is ample authority in statute and case law for the award of one marital partner's separate property to the other marital partner. Although the trial court did not clearly indicate the legal basis for its ruling, it is evident that the trial court chose to divide the trust pursuant to MCL 552.401. MCL 552.401 states as follows:

> The circuit court of this state may include in any decree of divorce or of separate maintenance entered in the circuit court appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property . . . . [MCL 552.401.]

-10-

In *Hanaway v Hanaway*, 208 Mich App 278; 527 NW2d 792 (1995), this Court enumerated a non-exhaustive list of factors to be considered to attain the equitable distribution of property in a divorce action. Those factors were: "the source of the property; the parties' contributions toward its acquisition, as well as to the general marital estate; the duration of the marriage; the needs and circumstances of the parties; their ages, health, life status, and earning abilities; the cause of the divorce, as well as past relations and conduct between the parties; and general principles of equity." *Id*. at 292-293. In ruling that one-third of defendant's interest in the trust would be awarded to the plaintiff the court here stated, "[plaintiff] did have contributions to this asset by care to the children while [defendant] was working these long hours up to 14 hours a day." This was the extent of the trial court's factual findings on the subject. The court only appeared to consider that both parties contributed to the acquisition or growth of the asset. However, that finding alone did not explain the court's finding that plaintiff was entitled to one-third share of SE. Accordingly, the court's dispositional ruling regarding SE must be vacated, and the matter remanded for additional fact-finding, including a reopening of the proofs, if necessary. On remand, we direct the court to consider the *Hanaway* factors and articulate the reason for the amount awarded. MCR 2.517(A)(1) and (2).

Defendant also argues that the trial court erred in ordering him to pay $1 million to defendant as a lump sum. He contends that his stock shares are not liquid assets that can readily be paid over to another party. We hold that while the exact amount of plaintiff's share, if any, of the interest in SE is to be determined on remand, defendant has failed to demonstrate that the trial court cannot direct that payment be in one lump sum. Defendant cites to *Olson v Olson*, 256 Mich App 619, 625-626; 671 NW2d 64 (2003). In *Olson*, this Court concluded that the trial court abused its discretion by failing to make findings regarding the value of a corporation when splitting the stock of the corporation between the parties. *Id*. at 629. This Court remanded the matter to the trial court to allow it to make findings regarding the value of the stock and "grant plaintiff a cash award in an amount equal to one-half of the value of defendant's stock interest in the corporation." *Id*. This Court noted that the trial court had discretion to "determine the period over which the cash award will be payable." *Id*. at 629 n 7. Although *Olson* states that the trial court has discretion to determine how an equitable monetary award is paid, it does not state that the trial court abuses its discretion by ordering a party to make a lump sum payment to his or her spouse as a result of the division of property in a divorce. Indeed, defendant cites to no relevant authority in support of this proposition, and relies solely on the *Olson* case, which merely states that a trial court *can* order payment in installments, not that it *must*. "This Court will not search for law to sustain a party's position where that party neglects to cite any supporting authority for its claim." *Liggett Restaurant Group, Inc v Pontiac*, 260 Mich App 127, 138; 676 NW2d 633 (2003). Accordingly, defendant has failed to establish that the trial court abused its discretion by ordering him to pay a lump sum to plaintiff for her share of defendant's interest in SE.

## IV. MARITAL ASSETS – CHICAGO CIRCUIT BOARDS

Defendant argues that the trial court erred in valuing his interest in a company called Chicago Circuit Boards ("CCB") at $20,640 and including it as part of the marital estate. We agree.

When addressing issues regarding the valuation of marital property, the trial court must make findings of fact and then "decide whether the dispositive ruling was fair and equitable in

light of those facts." *Butler*, 308 Mich App at 207. This Court will affirm the trial court's discretionary ruling unless "left with the firm conviction that the division was inequitable." *Berger*, 277 Mich App at 717-718. The trial court's findings of fact and decision to award half of the $20,640 disbursement to plaintiff are preserved, as "[n]o exception need be taken to a finding or decision" of the trial court. MCR 2.517(A)(7).

Defendant first argues that the trial court erred by including his interest in CCB as marital property because he received stock in CCB in the 1990s, well before he was married to plaintiff. As previously noted, a trial court is required to determine "what property is marital and what property is separate" when dividing marital property between two parties. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). Property that is acquired or earned before a marriage is separate property, and is generally not subject to division as part of a marital estate. *Id.* Assets that are separately owned and maintained cannot be invaded by the trial court when distributing property in a divorce action. *Woodington*, 288 Mich App at 364.

Defendant testified that he received a 12.5% ownership interest in CCB in the mid-1990s, when his father founded the company. This evidence was not disputed by the parties at any point during the trial. Because defendant received his interest in CCB before his marriage to plaintiff, his interest in the company is a separate asset that typically is not subject to distribution between the parties. *Id.* However, a limited number of exceptions to this rule exist. The trial court may invade a party's interest in an asset "if one party demonstrates additional need, or had significantly contributed to the acquisition or growth of the separate asset." *Id.* The trial court made no findings regarding plaintiff's additional need or contribution to the growth of CCB when it valued defendant's interest and divided it between the parties:

> [CCB]: The only financial information for this entity was a 2016 K(1) indicating a 10.75 percent interest by [defendant], and the 2016 distribution to him in the amount of $105,797.00, and in 2015 wages listed as Other Illinois source . . . . [Defendant] did receive $15,480.00 distribution in 2017 annualized by [the parties' joint expert] at $20,640.00.
>
> It's not plain what the 2015 wages were from [CCB]. Based on this very scant information, the [c]ourt's only real basis to providing any value to this is based on the $20,640.00, 2017 interest in [CCB] and the [c]ourt awards one half of the $20,640.00 to . . . [plaintiff] . . . .

Additionally, defendant testified that he had little to no involvement with the day-to-day business of running CCB:

> *Q.* Okay, so did you ever work . . . at [CCB]?
>
> *A.* No, never.
>
> *Q.* Did you do during the marriage anything to actively contribute to its value?

*A.* You know when . . . we were in Chicago . . . we were nearby. So if [CCB] had any questions or something I could help them out and take a look at something.

But I mean over the course of a few years you're talking less than 20 hours if that and that's just normally I would help anybody else out.

The trial court nevertheless chose to include defendant's interest in CCB in the marital estate and divide it between the parties without finding whether the interest was premarital property, and if so, whether it could still be invaded and divided in a divorce action. "[S]eparate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property." *Cunningham*, 289 Mich App at 201 (quotation marks and citation omitted). However, the record does not provide substantive facts indicating whether commingling of assets occurred, or whether defendant's distributions from CCB were treated as marital property.

Defendant also challenges the court's valuation of his interest in CCB. Defendant contends that the trial court erroneously used a figure representing an annualized distribution from CCB in order to assess the value of CCB as part of the distribution of marital property. As noted above, the trial court stated that "the [c]ourt's only real basis to providing any value to this is based on the $20,640.00, 2017 interest in [CCB] . . . ." The parties' joint expert specifically stated that he was aware that defendant had an interest in CCB, but "was not provided any information in order to determine the value of [CCB]," and merely "include[d defendant's CCB] distribution . . . as income available for support." Defendant's expert only briefly mentioned defendant's interest in CCB, and gave no opinion on its value.

The trial judge's dispositional ruling regarding CCB is remanded to the trial court for additional fact-finding, including a reopening of the proofs, if necessary. On remand, the trial court should first determine whether defendant's interest in CCB is premarital property and whether it is subject to distribution. If defendant's interest in CCB can be divided in the divorce action, the trial court should engage in further fact-finding regarding the value of defendant's interest. Additionally, "[i]f the court does not have ample information from the expert testimony to determine a fair value [of a party's business interest,] it may appoint its own disinterested appraiser to assist the court." *Steckley v Steckley*, 185 Mich App 19, 23; 460 NW2d 255 (1990).

## V. CALCULATION OF INCOME AVAILABLE FOR SUPPORT

Defendant argues that the trial court abused its discretion by awarding child support and spousal support based on an erroneous calculation of his income available for support, and by ruling that the spousal support award was nonmodifiable. We do not agree that the calculation of defendant's income available for support was incorrect, but agree that the trial court erred by stating that the spousal support award was nonmodifiable.

This Court "review[s] a spousal support award for an abuse of discretion." *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). A trial court's order to pay child support is also reviewed for an abuse of discretion. *Fisher v Fisher*, 276 Mich App 424, 427; 741 NW2d 68 (2007). "An abuse of discretion occurs when the trial court's decision falls outside the range of

reasonable and principled outcomes." *Loutts*, 298 Mich App at 26 (quotation marks and citation omitted). The trial court's factual findings, including those regarding the calculation of income available for support, are reviewed for clear error. *Id*. "If the trial court's findings are not clearly erroneous, [this Court] must determine whether the dispositional ruling was fair and equitable under the circumstances of the case." *Id*. The trial court's ruling must be affirmed unless this Court is "convinced that it was inequitable." *Id*.

In calculating child support, the trial court must follow the Michigan Child Support Formula ("MCSF"). See MCL 552.605(1). There is no dispute that the trial court did so herein. Under the MCSF, the first step in the determination of a parent's child support obligation is "to establish, as accurately as possible, how much money a parent should have available for support." 2017 MCSF 2.01(B). If the parties' income varies from year-to-year, the trial court must use "three years' information" to calculate income available for support. 2017 MCSF 2.02(B).

Additionally, in calculating spousal support, this Court has set forth a number of factors to be considered, to ensure that the award of spousal support properly "balance[s] the incomes and needs of the parties in a way that will not impoverish either party," and will be "just and reasonable under the circumstances of the case." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010) (quotation omitted). These factors include:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson*, 256 Mich App at 631.]

There is no dispute that the trial court properly considered these factors on the record when making its determination regarding spousal support.

Defendant specifically contends that the trial court erred and abused its discretion in awarding $5,786 per month in child support and $9,000 in spousal support because it relied on an erroneous calculation of his income available for support. The parties' joint expert estimated that a three-year average of his income available for support was $416,232. Conversely, defendant's expert estimated that defendant's three-year average income available for support was $232,000. The trial court agreed with the joint expert's calculation, and estimated that defendant's income available for support was $416,232.

Defendant contends that the joint expert's calculation was incorrect because it included income that defendant would not earn in the future from Saturn PCB Services ("SPCBS"), a company defendant owned. Defendant explains that SPCBS had only one customer, a manufacturer called Glory Faith ("GF"), which cancelled its contract with SPCBS in 2017. Defendant's expert testified that he did not include income from SPCBS in his calculation of defendant's income available for support because GF's termination of business with SPCBS

-14-

indicated that revenue from SPCBS would not be "available for support on an ongoing basis . . ." Conversely, the parties' joint expert included revenue that defendant received through SPCBS. The joint expert produced evidence showing that "[GF's] relationship was going to be terminated with [S]PCBS and ultimately they were going to deal directly with [SE]." Thus, the record indicated that defendant would still be receiving some revenue from GF through SE. The joint expert also stated that defendant drew a salary of $36,000 from SPCBS. The trial court agreed with the joint expert's calculation of defendant's income available for support, and found as follows:

> [Defendant's expert] presented certain adjustments to [defendant's] income, namely the removal of wages and distributions received . . . from [SPCBS] in 2016 and 2017 based on the assumption that the income would not be available in the future due to the cancellation of the contract between [SPCBS] and [GF] . . . .
>
> This adjustment is unwarranted in light of the testimony and all. The testimony was that [SE] also does business with [GF], has new business with [GF] since the cancellation of the [SPCBS] contract. And that specifically [SE] and [GF] upon cancellation of the [SPCBS] contract began "joint marketing strategies" intended to increase the revenues of both [SE] and [GF].
>
> Evidence further established that if [defendant] was not employed by [SPCBS], he could devote more time and attention to the other [SE] concerns, and presumably make more money. The [c]ourt finds this assumption and inference reasonable and will disregard the adjustments made by . . . [defendant's expert] and use the three year income average of $416,232 . . . .

The trial court's findings were supported by the record, which indicated that defendant would not be losing money because GF was merely choosing to do business directly with SE rather than SPCBS. Defendant will still make money from SE's relationship with his business interests because he has an interest in SE and serves as SE's president. Both expert witnesses presented compelling evidence, but the trial court ultimately found the joint expert's testimony more credible. This Court defers to the trial court's findings of fact, particularly those based on the credibility of witnesses. *Woodington*, 288 Mich App at 355. The trial court's findings of fact were not clearly erroneous, and it did not abuse its discretion in awarding child support and spousal support based on its determination that defendant's income available for support was $416,232.

Defendant also briefly argues that the trial court abused its discretion by awarding spousal support that was nonmodifiable and limited to a term of two years. When announcing its order to pay spousal support, the trial court stated:

> The Court finds that spousal support for rehabilitative nature is warranted here and will award spousal support in the amount of $9,000[] per-month for two years upon entry of the Judgement [sic] of Divorce. The spousal support shall be terminated upon either the remarriage or the death of . . . Plaintiff. The spousal support is not modifiable.

The judgment of divorce similarly states:

[C]ommencing September 1, 2018 Defendant shall pay spousal support to Plaintiff . . . in the amount of [$9,000] per month . . . for a period of 24 months from the September 1, 2018 [sic]. Spousal support shall terminate only [on] the death or remarriage of Plaintiff.

The trial court may award either periodic spousal support, or spousal support in gross. *Bonfiglio v Pring*, 202 Mich App 61, 63-64; 507 NW2d 759 (1993). Periodic spousal support payments "are subject to any contingency, such as death or remarriage of a spouse . . . ." *Staple v Staple*, 241 Mich App 562, 566; 616 NW2d 219 (2000). In contrast, spousal support in gross is paid as "either a lump sum or a definite sum to be paid in installments." *Id*. Spousal support in gross is nonmodifiable. *Bonfiglio*, 202 Mich App at 63. Periodic spousal support, on the other hand, is subject to modification. *Id*. Periodic spousal support can only be rendered nonmodifiable if the parties explicitly agree to waive the right to seek modification of the award, and include that waiver in the judgment of divorce. See *Staple*, 241 Mich App at 568 (holding that "the statutory right to seek modification of alimony may be waived by the parties where they specifically forgo their statutory right to petition the court for modification and agree that the alimony provision is final, binding, and nonmodifiable.").

The spousal support award herein appears to be periodic, not in gross. The trial court stated that the award of spousal support was rehabilitative in nature and would terminate on the death or remarriage of plaintiff. The $9,000 spousal award amount was also set to expire after two years. Under *Staple* and MCL 552.28, such a spousal support award must be modifiable by the parties, unless the parties specifically waive the right to modify the award. *Staple*, 241 Mich App at 568. Defendant did not concur with the spousal support award on the record. Additionally, there was no discussion on the record regarding the nature of the spousal support award, and it is unclear whether defendant was aware that "nonmodifiable" meant that he absolutely could not petition the trial court for a modification of the spousal support award. The judgment of divorce indicates that defendant agreed to the provisions, including the spousal support award, "as to form only," and indicated that he intended to appeal the trial court's ruling. Accordingly, defendant did not waive his statutory right to seek modification of the $9,000 spousal support award. On remand, the trial court should also elaborate on whether it intended spousal support to be "nonmodifiable spousal support in gross" or "modifiable periodic spousal support." If the intent was to provide for a sum certain to be paid periodically, the court should so modify the judgment. If instead the court intended modifiable support, it should amend the judgment to strike the term "non" before modifiable. See MCL 552.28 (granting trial court the authority to review a spousal support judgment).[2]

---

[2] MCL 552.28 states in full that, "[o]n petition of either party, after a judgment for alimony or other allowance for either party or a child, or after a judgment for the appointment of trustees to receive and hold property for the use of either party or a child, and subject to section 17, the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance, and also respecting the appropriation and payment of the principal and income of the property held in trust, and may make any judgment respecting any of the matters that the court might have made in the original action."

-16-

We affirm the judgment of divorce in part, vacate the portions concerning the distribution of SE, valuation of CCB, and the modifiability of spousal support, and remand for further proceedings consistent with this opinion.  We retain jurisdiction.


/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola
/s/ Anica Letica

# Court of Appeals, State of Michigan

## ORDER

Monica Vaghani Sutariya v Yashesh Sutariya

Docket No.     345115

LC No.     16-114520-DM

Cynthia Diane Stephens
Presiding Judge

Michael F. Gadola

Anica Letica
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until after they are concluded.  As stated in the accompanying opinion, we remand this case for the trial court to, in its discretion, take additional evidence or articulate further findings of fact regarding its property divisions of SE and CCB, and to also elaborate on whether it intended spousal support to be "nonmodifiable spousal support in gross" or "modifiable periodic spousal support," and indicate whether 24 months, or two years, is the desired amount of time for the spousal support award.  The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Cynthia Diane Stephens

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

February 18, 2020
Date

Chief Clerk